JOSEPH MOTT *v.* GILES HARRINGTON.

*(In Chancery.)*

If J. M. conveys lands to G. H. by a deed of warranty, absolute upon the face of it, but to secure G. H. for certain advances made and services rendered, and at the same time takes from G. H. a bond for reconveyance, J. M. will be let in to redeem upon paying the sum equitably due.

An answer, setting up, by way of defence, matter which is not responsive to the bill, is not proof of such matter.

A simple contract that G. H an attorney of J. M. should have one moiety, in fee, of the lands he should recover for him, is merged in a bond, subsequently executed, that G. H. should, on a certain contingency, reconvey the whole of the premises to J. M.

A court of equity will not enforce, in favor of a solicitor, a security taken from his client, pending a suit, for any thing beyond the sum actually due the solicitor.

THE orator, in his bill, alleged, that on the sixth day of May, 1832, he executed a deed to the defendant, in due form of law, containing covenants of seizin and warranty, of lots No. 49, 50 and 51 in the second range of lots in the town of Alburgh, and lots No. 8, 9, 10, 11 and 12 in the first range of lots in said Alburgh, to secure to the defendant a sum of money then due to him, and also to secure to one Heman Allen a sum of money then due to him, and further to secure the said Allen and the defendant, who were attorneys at law and solicitors in chancery, and engaged by the orator in prosecuting certain suits at law and in chancery, the payment of all sums of money that might thereafter be due to either of them ; that said deed was absolute upon the face of it, but intended by the parties to be only a mortgage to secure the payment of said moneys to said Allen and the defendant ; that on the same sixth day of May, 1832, and at the time of the execution of said deed from your orator to the defendant, the defendant executed and delivered to your orator a bond, of that date, in the penal sum of two thousand dollars, with a condition thereto annexed that if the defendant should execute and deliver to the orator a quit claim deed of said several lots of land, after the orator should have paid to the defendant all his just charges which he then had and might thereafter accrue against the orator, in all or any suits at law and in chancery and all bail bonds and executions in such suits and also all claims of the said Heman Allen against the

orator, which were then due or might thereafter accrue, then said obligation to be void, otherwise of force.

The orator further alleged, that he had paid the said Allen the full amount of his claim, in the premises; that he had applied to the defendant to ascertain the amount of his claims against the orator, and tendered him the sum of two hundred and sixty dollars in satisfaction of his claims and requested him to execute a quit claim deed of said lots of land to the orator; that the defendant refused to present and exhibit to the orator the amount of his claims against the orator and to receive the money due from the orator to the defendant and execute a quit claim deed to the orator of said lands. The orator prayed an account to be taken of the defendant's claims against the orator, and that the defendant might be decreed to convey to your orator, by a deed of quit claim, the said lots of land on the payment of such sum as in equity might be due to the defendant, and for further relief.

The defendant, in his answer, admitted that a deed was executed by the orator to him, of said lots of land, on the *fourth* day of May, 1832, and that the orator on the *sixth* day of May, 1832, requested the defendant to execute a bond to the orator to re-convey to him the said lots of land, upon the payment by the said orator of all claims of the defendant and of said Allen, &c., and thereupon the defendant executed to the orator the bond set forth in the orator's bill of complaint; but the defendant insisted, that, in February, 1817, the orator's wife and sons induced the orator to execute a deed of all his real estate to Joseph M. Mott, one of the orator's sons, and the said Joseph M. gave his notes to the orator for ten thousand dollars, and executed a mortgage of the same lands to the orator to secure the payment of said notes; that afterwards, in January, 1820, the said Joseph M. re-conveyed to the orator lots No. 49, 50 and 51, in the second range of lots; that in September, 1820, the orator sold to his sons Danford Mott and Benjamin Mott said lots, numbered 49, 50 and 51, for which the said Danford and Benjamin were to give their joint notes; that thereupon the orator executed a deed of said last mentioned lots to the said Danford and Benjamin, and, the said Benjamin not being present at the time of the execution of said deed, the said Danford gave his note for the land, which note the said Benjamin had agreed

to sign ; that the said deed was delivered to said Danford by the orator, with the confident expectation that the said Benjamin would sign said note on request ; that afterwards, the said Benjamin refused to sign said note or re-deed his interest to the orator in the lands so conveyed by the orator to said Danford and Benjamin ; that, in the fall of 1831, the orator represented to the defendant that the orator's sons were endeavoring to defraud him of his property ; that they and the orator's wife, had secretly, without the knowledge of the orator, obtained possession of the notes and mortgage given by said Joseph M. to the orator and had either destroyed or secreted them so that the orator could not find them ; that thereupon, the orator agreed with defendant, that if the defendant would bring suits, either in the courts of law or equity, against all or either of the orator's sons to recover said real estate, and assist in preparing the suits, and would enter bail or procure sufficient bail to be entered to prosecute such suits, &c. the orator would pay the defendant a fair compensation for his services and money expended, *and would give to the defendant one equal half of all the lands, money or other property obtained of the orator's sons, or either of them, by any suit which the defendant might bring to recover said lands, &c. ;* that the defendant, in pursuance of said agreement, commenced suits against Joseph M. Mott and Danford Mott for the recovery of said lands, for the orator, &c.; that, on the third day of May, 1832, the orator, with the assistance of the defendant and said Allen, effected a settlement of the orator's claim against Danford Mott, and the said Danford executed a deed of quit claim, in due form of law, to the orator, of said lots No. 49, 50 and 51.   And the defendant, in his answer, further alleged that he had faithfully performed his part of said agreement with said orator, relating to the recovery of said lands, and that the orator executed said deed to the defendant, dated the fourth day of May, 1832, of the said lots of land mentioned in the orator's bill, for the purpose of carrying into effect the said agreement between the orator and the defendant, as well as to secure the demands of the said Allen and the defendant, and insisted that he was entitled to be paid his costs and charges against the orator, and also to hold, absolutely, and for his own benefit, one half

of all the lands deeded by the orator to him on the fourth day of May, 1832.

The orator traversed the answer, and testimony was taken in the cause.

The facts proved by the testimony, sufficiently appear in the opinion of the court.

*Smalley & Adams*, for orator, contended, that, from the bill and answer, the orator was clearly entitled to the relief prayed for, on the ground that the conveyance from him to defendant was a mortgage.

*Defendant, pro se.*

I. The agreement between the parties, made in the fall of 1831, was fair and equitable and ought to be sustained. What was agreed to be done, is to be considered as done. *Beardsley* v. *Knight*, 10 Vt. R. 185.

The bond to re-deed, was never understood, by the parties, to have been given for any thing more than to secure the orator for that half of the lands which belonged to the orator by said agreement.

II. The orator is not entitled to relief. 1. Because his bond was sufficient in law to secure his rights. His remedy was at law. 2. The orator should have paid the defendant's claims, or should have done all on his part to settle and pay that could have been done. 3. He should have paid Allen's claim and taken up defendant's obligation therefor; all of which the orator has failed to do. Therefore, his bill ought to be dismissed. See *Washburn* v. *Titus*, 9 Vt. 211.

III. The orator's testimony is too irrelevant, inconsistent and contradictory, to disprove any part of defendant's answer. There is no one part set forth or contended for by the orator, proved by evidence of, or equal to two witnesses. See *Pierson* v. *Catlin*, 3 Vt. R. 272. Bridgman's Index, 231.

IV. The defendant is entitled to a decree of dismissal, or a decree of one equal half of the lands, and the amount due him from the orator.

The opinion of the court was delivered by

BENNETT, Chancellor.—The bill in this case is predicated upon the ground that the deed from the orator to the defendant, though absolute upon the face of it, is to be regarded as

a mortgage, and the orator's object in bringing this suit, is, to be let in to redeem. Is this view of the subject sustained by the evidence, and is the plaintiff entitled to redeem? The deed, it is true, bears date the 4th of May, 1832, and the date of its acknowledgment is the 5th, and the bond, wherein the defendant is bound to convey the premises to the orator, bears date the 6th of May. Tabor Sewell, one of the witnesses to the deed, and the justice who took the acknowledgment of it, testifies, that, at that time, he understood from both of the parties that the deed was given to secure the defendant for his costs, trouble and expense in prosecuting certain suits in favor of the orator against J. M. and D. Mott; and that he has but a faint recollection of a bond being given at the same time. The condition of the bond we find to be, that the defendant shall re-convey the premises to the plaintiff, upon being paid .his claims for fees and moneys paid out, &c. in the same suits, and the bond is witnessed by the same persons who were present and witnessed the deed.. It is alleged, in the bill, that they were executed at one and the same time, and this is not denied in the answer, but the defendant says they were executed bearing certain dates. This is not swearing that they were not, in fact, executed at one and the same. time.

From a careful examination of the whole testimony in the case, from the tenor of the condition of the bond and the nature of the transaction, we are satisfied that the conveyance by the orator and the agreement to re-convey by the defendant, were made at one and the same time, and that they are parts of one transaction, and that the bond, though of a different date, was executed at the same time. The orator's deed, then, is most clearly, in chancery, to be treated as a mortgage and he is entitled to redeem. It is however insisted, by the defendant, that, at all events, he is not entitled to redeem but one moiety of the premises.

The agreement set forth in the defendant's answer, that after being paid a reasonable compensation for his services and moneys paid out, he was also to have one half of the lands which should be recovered in the suits which he should institute for the orator, is not, I think, responsive to the bill, and is not proved by other evidence in the case. But if it were, we are all agreed that it could not avail the defendant.

GRAND ISLE,
*January*,
1840.

Mott.
*v.*
Harrington.

The settlement was made with Danford Mott, in regard to lots No. 49, 50 and 51, on the third of May, 1832, and a quit-claim deed executed to the orator one day before the deed was given to the defendant.

Any prior agreement that might have existed between the parties, in regard to the defendant's being entitled to one half of the lands which should be recovered, would have been merged in his bond to re-convey, and cannot be set up to excuse him from fulfiling the condition thereof. Besides, the contract, set forth in the defendant's answer, is such an one as could not be enforced. Transactions between solicitor and client are always scrutinized with a jealous eye, and a court of equity will not suffer a solicitor to take a security from his client, pending a suit, for a single shilling by way of gratuity, however reasonable this might be in many cases. *Saunderson* v. *Glass*, 2 Atk. R. 297. In the case of *Wood* v. *Downes*, 18 Ves. 120, it was held that beneficial contracts and conveyances obtained by an attorney from his client, during their relation as such, and connected with the subject of the suit, should stand as a security only for what was actually due. So in *Hylton* v. *Hylton*, 2 Vesey, Sen. 547, it is laid down as clear law, that no attorney can take any thing from his client, pending the suit, save his demand. The orator is, then, most manifestly entitled to be let in to redeem the whole premises. It becomes necessary that an account should be taken, to ascertain the sum due the defendant, and the court accordingly send the case to a master for that purpose, and, upon the coming in of the report, the court will pronounce a final decree, and upon such terms, as to costs, as they shall then think reasonable.