Mr. Justice MacArthur
delivered the opinion of the court:
The principal ground on which the case is defended is, that the agreement set up in the bill is champertous and void. In the case of Stanley vs. Jones, 7 Bing., 349, Chief-Justice Tindall defines champerty to be the unlawful maintenance of a suit in consideration of some bargain to have a part of the thing in dispute. This is the generally-received meaning of champerty in this country as well as in England. Thalimer vs. Brinkerhoff, 20 Johns, 386; 9 Met., 489; 18 Ind., 117. Now, by the terms of the contract, Stanton and Rogers undertook to prosecute a suit in chancery against one William Durr, for the recovery of 78J acres of laud, upon an agreement to receive one-third of whatever might be recovered in land or money, and Stanton now claims an undivided third of the property.
The strictness which formerly prevailed in the common-law doctrine of champerty has been considerably relaxed by modern decisions. An action can now be maintained in most, if not all, of the States of the Union for contingent fees. This court has recently decided in favor of a contract for a contingent fee in prosecuting sucessfully a private claim against the United States, where the services were to be rendered in a fair and open presentation of the facts, and where no secret or corrupt means were employed to mislead or deceive the legislative body. Child vs. Trist, ante, page 1.
So relations by blood, and all parties having an interest in the property, however contingent that interest may be, can lawfully maintain each other in actions concerning the land sought to be recovered. With these, and perhaps some other modifications, the common law with regard to cham *562 perty, which is supposed to be founded on the statute of 28 Edward I, is generally recognized, except where it has been abolished by legislative enactment. It was the law in Maryland in 1801, and has never been abrogated in this jurisdiction. We must, therefore, hold that, with the qualifications established by modern decisions, the principle prevails in this District. That the contract here, so far as relates to the land in controversy, is affected by champerty at common law, no one can doubt; and, notwithstanding the law is rendered more rational by modern decisions, yet no court of equity has gone the length of enforcing the specific performance of an agreement for part of the land in dispute. While the principle of champerty remains a substantive part of our law, it is clearly our duty to enforce it.
We also think another settled principle is applicable to this case. It is, that all contracts between attorney aud client, by which the fornier gains any advantage, are to be regarded simply as security for whatever he may have advanced or for what his services are worth. Some of the authorities hold that the burdeu of proving the fairness of such contracts is upon the solicitor, and they are to be regarded with suspicion, and with a presumption that they are unfair. Evans vs. Ellis, 5 Denio, 640; 6 Ves., 277; Newman vs. Payne, 2 Ves., p. 199; Mott vs. Harrington, 12 Vt., 199; Berrien vs. McLane, 1 Hoff. Ch., 421; Wheelan vs. Wheelan, 3 Conn., 537; Starr vs. Vanderheyden, 9 Johns., 253; 3 Ves., 740. We doubt the justness of these rules in the present condition of the profession, and we think lawyers may be trusted to provide for their compensation according to the fund that may be collected or recovered by their skill and diligence in conducting an important and valuable claim. All agreements made for mere contingent compensation are generally meritorious, and should be enforced. The most respectable - counsel conduct immense litigations with no other hope of reward. But in this case there is an effort to ¡recover land, not as a measure of compensation, but as a part of the very property in controversy. There is nothing in the evidence to induce a belief that there was any intrinsic difficulty in the case against Durr, or that its prosecution required great diligence or ability. It appears to have been *563 comparatively free from hazard or uncertainty. In view of these facts, we think the complainant has been compensated for his services, and is not entitled, under established principles, to any benefit from the security set out in his bill.
It appears from the testimony that Haskin and wife consulted with Rogers ; that they laid the surveyor’s plat of the lands in dispute before him, and that Rogers, in turn, consulted with the complainant. The contract was then prepared by complainant himself, reciting the fact of their having been retained in the following words: “We have employed A. J. Rogers and F. P. Stanton to institute a suit in chancery for us against William Durr.” By preparing and accepting this agreement we think the complainant is concluded as to the nature of his relations, being attorney to Haskin and wife. It is in that capacity they were consulted, and by becoming a party to this agreement they admit their previous employment.
We do not discover by the proofs in this case anything which will justify the imputation that the complainant, who is a highly-esteemed member of the bar, used any undue influence with Haskin and wife to enter into this contract, and there is nothing in the circumstances attending its execution from which we can infer that they were surprised into it by any influence or device of his. Still, upon the principles already announced, the decree dismissing the bill must be affirmed.